UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA DEMOS, | |
| Plaintiff, | No. 23 CV 741 |
| v. | Judge Thomas M. Durkin |
| JEREMY SCHNEIDER; JAMES MENDRICK; and DUPAGE COUNTY | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff Andrea Demos ("Demos") alleges that, while she was in custody at the DuPage County Jail, Officer Jeremy Schneider ("Schneider") and other unnamed correctional officers used handcuffs to place her in a "hog-tie," partially removed her clothing, refused to provide her prescribed medications, left her in her cell in unsanitary conditions, and intentionally delayed providing her necessary medical care. She sues Schneider in his individual capacity and DuPage County Sheriff James Mendrick ("Mendrick") in his individual and official capacities under 42 U.S.C. § 1983. Demos also seeks to hold DuPage County liable under the theory of indemnification. Defendants move for partial dismissal of Counts I, II, III, and V, and full dismissal of Count IV under Federal Rule of Civil Procedure 12(b)(6). R. 15. For the reasons stated below, Defendants' motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short

1

and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Demos suffers from multiple medical issues, including complex regional pain syndrome and fibromyalgia, for which she takes medications. R. 12 ¶ 10. On February 5, 2021, Demos was arrested by Schneider on an outstanding warrant and held in custody at the DuPage County Jail (the "Jail"). *Id.* ¶¶ 11–13. Demos asked Schneider why she was in custody and what she was being charged with. *Id.* ¶ 13. Demos alleges that Schneider handcuffed her ankles, handcuffed her hands behind her back, and

2

secured her ankles and wrists together in a "hog-tie" fashion. *Id.* ¶ 16. While she was in this position, Schneider and/or other correctional officers allegedly cut Demos's clothing off from her buttocks to her head and proceeded to remove her bra in a violent fashion, causing personal injuries and bruising. *Id.* ¶¶ 17–18. Demos was left in her cell partially naked. *Id.* ¶ 19. Demos states that at no point while in custody at the Jail did she resist or pose a risk of harm to the correctional officers, staff, or employees. *Id.* ¶¶ 30–31.

Demos also contends that she asked Schneider for her medications and informed him and other correctional officers and staff that if she did not receive those medications, she was at risk to have seizures. *Id.* ¶¶ 14–15. Over the course of February 5 and 6, 2021, Demos's mother likewise contacted the Jail over the phone, brought medications to the Jail in-person, spoke with a nurse at the Jail, and appeared on Zoom in bond court. *Id.* ¶¶ 20–23. In each interaction, Demos's mother informed Jail personnel that if Demos did not take her medications, she was at risk of serious harm. *Id.* On February 6, 2021, Demos suffered from multiple seizures, vomited on herself repeatedly, aspirated on her own vomit, and urinated on herself. *Id.* ¶¶ 24–27. Three days later, on February 9, 2021, Demos was taken via ambulance to Central DuPage Hospital for emergency medical treatment. *Id.* ¶ 28.

Demos filed her Complaint on February 6, 2023, R. 1, and her First Amended Complaint ("FAC") on May 22, 2023. R. 12. Counts I through III, styled as claims arising under the Fourteenth and Eighth Amendments, allege Schneider used excessive force against Demos, *id.* ¶¶ 32–39, that Schneider and Mendrick were

deliberately indifferent to her serious medical needs, and that Schneider and Mendrick deprived her of humane and sanitary conditions of confinement. *Id.* ¶¶ 54, 58–64. Count IV states a *Monell* claim against Mendrick in his official capacity stemming from institutional policies, customs, practices, and a failure to train that created a risk that corrections officers would be deliberately indifferent to inmates' serious medical needs and would result in a failure to provide medication in a timely fashion. *Id.* ¶¶ 72, 75, 82. And finally, Count V asserts that the County must indemnify Schneider pursuant to 745 ILCS 10/9-102. *Id.* ¶ 85.

Defendants filed an answer and a partial motion to dismiss. R. 15. Defendants argue that, to the extent that Demos alleges that Counts I, II, and III arise under the Eighth Amendment, they should be dismissed because the Eighth Amendment applies only to convicted persons, and Demos was a pre-trial detainee at the time of the alleged incidents. They also request full dismissal of Demos's official policy, custom and practice, and failure to train *Monell* claims alleged in Count IV. Defendants finally move to dismiss Count V in part because, if Demos's Eighth Amendment claims cannot go forward, then DuPage County cannot be liable for indemnification of those same claims.

## Discussion

### I. Eighth Amendment Claims

First, the FAC states that Counts I, II, and III arise under the Eighth and the Fourteenth Amendments. *Id.* ¶¶ 32, 41, 57. The Seventh Circuit recognizes that the Eighth Amendment provides protections to convicted prisoners. *Est. of Cole by*

4

*Pardue v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996), while the Fourteenth Amendment provides protections to pre-trial detainees. *Miranda v. Cty. of Lake*, 900 F.3d 335, 350–51 (7th Cir. 2018) (citing *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017)). Demos alleges that she was arrested on an outstanding warrant, and, while at the Jail, asked Schneider why she was in custody and what she was being charged with, indicating that, at the time of incidents, she had not been convicted of any crime. R. 12 ¶¶ 11–12. The Court infers from these facts that Demos was a pre-trial detainee.

And though Demos is correct that pre-trial detainees "are entitled to at least as much protection" as the United States Constitution provides to convicted prisoners, *Miranda*, 900 F.3d at 350 (citing *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) and *Bd. v. Farnharm*, 394, F.3d, 469, 477–78 (7th Cir. 2005)), those protections arise under the Fourteenth, not the Eighth, Amendment. Therefore, the allegations in Counts I, II, and III pertaining to the Eighth Amendment (parts of ¶¶ 32, 41, 57, and 77) are stricken. Also, Demos may not seek for DuPage County to indemnify Schneider for any Eighth Amendment claim. Even though the Eighth Amendment claims are dismissed, Defendants have not moved to dismiss the Fourteenth Amendment claims based on the same allegations, and those claims will proceed to discovery.

## II. *Monell* Claims

In Count IV, Demos pleads *Monell* claims against Mendrick in his official capacity as DuPage County Sheriff under express policy, custom and practice, and failure to train theories. Such claims hold local governments legally responsible for

5

constitutional deprivations that they cause. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Further, a plaintiff must show that the "policy or custom caused the constitutional injury." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). In other words, the plaintiff must allege that a specific policy or custom or a failure to train "was the moving force behind the federal-rights violation." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021). The FAC fails to do so as to each of Demos's *Monell* theories.

### A. Express Policy Claim

A governmental entity is liable under § 1983 if "an express policy . . . causes a constitutional deprivation when enforced." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). The plaintiff must actually "[l]ocat[e] a 'policy,'" which "ensures that a municipality is held liable only for those deprivations resulting from the decisions . . . of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997); *Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016) ("[A] plaintiff must plead facts that show that there is a true municipal policy at issue, not a random event." (internal citations omitted)). Mendrick argues that Demos's official policy claim should be dismissed because Demos never points to any specific, producible policy or procedure. Indeed, the FAC merely states that the Jail's "officially promulgated policy regarding supplying inmates with their medications" is unconstitutional because it fails "to address the serious medical needs of the inmates." R. 12 ¶¶ 71–72. It further states that the policy "failed to ensure" that

6

officers properly verified, identified and administered medications to inmates at the jail. *Id.* at 73 (1)–(10). But Demos does not identify what, exactly, that specific policy was. These conclusory statements alone do not suffice to state a claim.[1] *Iqbal*, 556 U.S. at 678. And without reference to the actual policy at issue, Demos also cannot identify a direct, causal link between the policy and the constitutional violation. *First Midwest Bank*, 988 F.3d at 987. Demos's express policy *Monell* claim must be dismissed.

### B. Custom and Practice Claim

Demos next alleges that a Jail custom and practice "regarding supplying inmates with their prescribed medications" is unconstitutional because it fails "to address the serious medical needs of the inmates." R. 12 ¶¶ 74–75. Besides making identical conclusory allegations as the express policy claim, this claim fails because Demos does not adequately allege the existence of an unconstitutional custom or practice.

The Seventh Circuit has not adopted any bright-line rule defining what a "custom or practice" is, but it has held that the plaintiff must allege "more than one instance." *See Thomas*, 604 F.3d at 303 (quoting *Cosby v. Ward*, 843 F.2d 967, 983

---

[1] In each of the cases Demos cites, the plaintiffs alleged an identifiable policy or procedure. *Glisson v. Ind. Dep't of Corrections*, 849 F.3d 372, 380 (7th Cir. 2017) (plaintiff asserted the defendant had a "deliberate policy not to require any kind of formal coordination of medical care within an institution . . . or across institutions for prisoners who are transferred"); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2009) (holding that a policy/practice of severe understaffing was not the cause of the plaintiff's death); *Woodward v. Med. Servs. of Ill. Inc.*, 368 F.3d 917, 920 (7th Cir. 2004) (finding that staff ignored written policies). Here, Demos never points to any policy.

(7th Cir. 1988)). Though not impossible, "[i]t is difficult to sufficiently allege a Monell claim by pointing to only . . . the plaintiff's own experience." *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) (listing cases). This is because the plaintiff must plead facts that show that the practice was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Arquero v. Dart*, 587 F. Supp. 3d 721, 728 (N.D. Ill. 2022); *Nettles-Bey v. Burke, No*. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015) ("[I]solated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice.").

Demos argues that she has pleaded at least four incidents of correctional officers at the Jail ignoring her and her mother's requests for her medications. The FAC does not allege that these "incidents" were pervasive or part of a larger pattern, but rather, that they constituted a single deprivation of medication that Demos experienced. To survive a motion to dismiss, Demos must allege more. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that four incidents of negligent prescription medication disbursement that plaintiff personally experienced failed to meet the standard of a widespread unconstitutional practice); *see also Est. of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2006) (holding that three incidents of use of pepper spray on inmates that the plaintiff observed "do not amount to a 'widespread practice' that is 'permanent and well settled' so as to constitute an unconstitutional custom or policy").

### C. Claim Based in Failure to Train

Demos's failure to train theory similarly fails to state a claim. Failure to train liability is rare, but it can be a basis for § 1983 liability when "inadequate training amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (cleaned up) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). When a municipality fails to train an employee whose conduct they know to be deliberately indifferent, the municipality is itself demonstrating deliberate indifference to that known risk. *Flores*, 997 F.3d at 731. Moreover, failure to train liability arises when a municipality adheres to a training program "that they know or should know has failed to prevent tortious conduct by employees." *Id.* (citing *Brown*, 520 U.S. at 407). Generally, to be held liable, the municipality must have knowledge of a "pattern of tortious conduct demonstrating the need for additional training, 'rather than a one-time negligen[ce].'" *Flores*, 997 F.3d at 731 (citing *Brown*, 520 U.S. at 407–08). But a plaintiff may base a successful claim on a single constitutional violation if the "risk of constitutional violations [is] so high and the need for training so obvious that the municipality's failure to act . . . reflect[s] deliberate indifference and allow[s] an inference of institutional culpability." *J.K.J.*, 960 F.3d at 380.

In her FAC, Demos alleges that Mendrick failed to train his correctional officers and staff to identify, verify, record, and timely administer to inmates their prescribed medications. R. 12 ¶¶ 79–81. Demos merely states, in a conclusory fashion and without factual support or detail, that "at least one other inmate" failed to receive

9

his or her medications. This is not the sort of well-pleaded fact that the court must assume is true. *Hernandez*, 63 F.4th at 666; *Grieveson*, 538 F.3d at 774 ("One broad, vague statement about an occurrence affecting other inmates in a detention facility does not support the inference of a 'widespread' custom."). Effectively, she provides no well-pleaded allegations that Mendrick had knowledge of unconstitutional conduct by Jail staff and intentionally decided not to address it with training. This is fatal. *Connick v. Thompson*, 563 U.S. 51, 1360 (citing *Brown*, 520 U.S. 397) ("[A] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."); *cf., Flores*, 997 F.3d at 731 (plaintiff adequately stated a failure to train claim where she alleged that a city knew of at least three prior occasions during which an officer was criminally reckless, but failed to initiate further training); *J.K.J.*, 960 F.3d at 380–83 (evidence that policymaker knew about sexual misconduct by correctional officers toward female inmates, yet failed to institute sufficient sexual harassment training, was enough to support jury verdict holding prison responsible for rapes via *Monell* liability).

Therefore, each of Demos's theories of *Monell* liability in Count IV do not state a claim and are dismissed.

## Conclusion

For the forgoing reasons, Defendant's partial motion to dismiss is granted. The claims against Schneider and Mendrick arising under the Eighth Amendment only in Counts I, II, and III, and the claim for indemnification against the County for the

same in Count V, are dismissed with prejudice.[2] The Fourteenth Amendment claims contained in those Counts will proceed. Thus, parts of paragraphs 32, 41, 57, and 77 referring to the Eighth Amendment are stricken. Count IV is dismissed in its entirety without prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

DATED: October 27, 2023

---

[2] These allegations are dismissed with prejudice because Demos can plead no new facts, consistent with the FAC, that would apply the Eighth Amendment's protections of convicted prisoners to her.